ADAMS *v.* McALPINE.

1. TAXATION—MATCHING OF BID BY FORMER OWNER—EQUITY—
   CLEAN HANDS.

   In suit under State land office board act by purchaser from
   State at so-called scavenger sale of improved realty which he
   had occupied as tenant of defendant landlord's mother be-
   fore her death and before acquisition of title by State be-
   cause of tax delinquency had entered into 5-year lease with
   defendant landlord for decree declaring plaintiff owner be-
   cause defendant landlord had not come into court, claiming
   as owner with right to repurchase premises, with clean hands,
   issue as to clean hands was unimportant where such defendant
   showed he was the sole owner of the property subject to tax
   liens and payment of debts of mother's estate (Act No. 155,
   Pub. Acts 1937, as amended).

2. SAME—DECLARATION OF OWNERSHIP—MATCHING BID—FINDING OF
   COURT—RECORD.

   In suit by former tenant who purchased improved real estate
   at so-called scavenger sale for declaration as to ownership and
   right to a deed, finding of court that former landlord was the
   owner of the property, that his interest was greatly in excess
   of former lessee's interest, and that his matching bid, made
   through bidding agents, was regular and made in accordance
   with pertinent rules and regulations of the State land office
   board was supported by record (Act No. 155, Pub. Acts 1937,
   as amended).

3. SAME—LANDLORD AND TENANT—INTEREST IN PROPERTY AT SCAVEN-
   GER SALE.

   A tenant of property under a lease for years has no interest in
   property entitling him, as purchaser at so-called scavenger
   sale, to preference over delinquent landlord who matches the
   bid, and payment of rent to landlord after State had ac-
   quired title gave tenant no investment or interest in prop-
   erty (Act No. 155, Pub. Acts 1937, as amended).

4. COSTS—TIMELY BRIEF.

>No costs are allowed on appeal in chancery case upon affirmance of decree where appellee failed to file timely brief.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 20, 1942. (Docket No. 77, Calendar No. 42,155.) Decided November 24, 1942.

Bill by Marko N. Adams against James McAlpine and State Land Office Board for a declaratory decree. Bill dismissed. Plaintiff appeals. Affirmed.

*Harry S. Bennett* and *David M. Miro,* for plaintiff.

*Daniel P. Cassidy,* for defendant.

CHANDLER, C. J. The instant suit was instituted for the purpose of obtaining a declaratory decree in accordance with the provisions of the State land office board act, entitling persons claiming as owners of subject premises to a trial *de novo* in the circuit court for the county in which such premises are situated. See Act No. 155, Pub. Acts 1937, as amended (Comp. Laws Supp. 1940, 1942, § 3723–1 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 7.951 *et seq.*).

The premises involved consist of certain improved property in the city of Detroit known as lot 161, subdivision of part of Godfroy farm, private claim 726, lying between Howard and Market streets, according to the plat thereof recorded in Wayne county records. The improvements thereon consist of two stores, two second-floor family flats and one dwelling house.

Prior to July 16, 1937, title to the property was vested in one Marion McAlpine. On the date mentioned, the then title owner died intestate, leaving as her sole heir at law, James McAlpine, one of the defendants herein.

Plaintiff had been a tenant of Mrs. McAlpine of the two store rooms for a period of nearly five years prior to her demise.

On August 23, 1937, plaintiff, as lessee, and defendant McAlpine, as lessor, entered into a written lease of said store rooms for a term of five years beginning September 1, 1937, said premises to be used and occupied for any lawful retail business by plaintiff. The rental was fixed at $90 per month, payable monthly in advance on the first of each month for the first two years, and for the remainder of the term the sum of $100 was payable monthly.

The taxes assessed against the premises in question remained unpaid for a period of many years and the entire property was ordered sold for delinquent taxes for the year 1935 and prior years and was bid in by the State of Michigan, title becoming absolute in the State on November 3, 1939.

Plaintiff paid to the former owner McAlpine the rental for said store rooms for the months of November and December, 1939, and January and February, 1940, at about which time the State of Michigan, through the agency of the State land office board, caused a demand to be served on plaintiff for possession of the premises so leased to him. Thereafter, no rental was paid.

It further appears from the record that after due notice the land office board offered the premises for sale on March 7, 1941, and that plaintiff was the only and successful bidder for the property, bidding therefor the sum of $2,532.50, that amount being exactly 25 per cent. of the assessed valuation of the lot and improvements. The full amount of the bid was paid and a certificate of purchase was issued to plaintiff by the State land office board.

On April 1, 1941, a matching bid for the property from the former owner, defendant McAlpine, together

with 10 per cent. of said bid, was received by the land office board, accompanied by the affidavit of an agent for said McAlpine showing former ownership as required by the rules and regulations of said board.

The controversy between plaintiff and defendant McAlpine as to who was entitled to a deed was referred to the arbitration board of the State land office board, who determined that defendant McAlpine had the greatest financial investment in the property and was the former owner thereof; that he was entitled to a contract in accordance with his application to the State land office board; and that plaintiff was entitled to and should receive the return of the money deposited by him at the time of the bid for said property upon the surrender of his certificate of purchase.

Following this proceeding, the bill of complaint in the instant case was filed and after hearing the trial court sustained the decision of the State land office board that defendant McAlpine was the former owner of the property within the meaning of the statute herein involved and the rules and regulations of the State land office board and that he had the greatest financial investment therein. A decree was entered dismissing plaintiff's bill of complaint, without costs, and plaintiff appeals.

The decree also contained the following provision:

"It is further ordered, adjudged and decreed that, before delivery to defendant, James McAlpine, of the conveyance by land contract of said lot 161, subdivision of part of the Godfroy farm, as hereinbefore described, defendant, State land office board, shall require defendant, James McAlpine, to save plaintiff harmless from any and all claims of said State land office board for rent of the two stores described in lease hereinbefore mentioned for the period from November 3, 1939, to February 29, 1940."

We are at a loss to understand under what theory, if any, plaintiff is entitled to the relief sought in his bill of complaint, other than the indemnity accorded him by the trial court, from which indemnity provision no cross appeal was taken.

Plaintiff's brief states two questions as being involved. The first is as follows:

"Where one of two 'owners' files a petition against other and State land office board for declaratory decree seeking trial *de novo* of right to preference in purchase of land from the State of Michigan as authorized by the State land office board act, does the equitable principle 'he who comes into equity must do so with clean hands' apply equally to the plaintiff and defendant?"

Under this heading, plaintiff argues that the conduct of defendant McAlpine was inequitable. The record shows that upon the death of Mrs. McAlpine, the title owner, defendant McAlpine was appointed administrator of her estate. She died seized and possessed of certain other real estate in addition to that involved herein. None of her real estate was inventoried by the administrator in the probate court. Later, upon citations issued by the probate court of Wayne county, the administrator filed an amended inventory describing the real estate of which his mother died seized. It is the claim of plaintiff that this omission to inventory the property in question was an attempt on the part of the administrator to exempt the real estate of decedent from being subjected to the payment of her debts. At the time of the hearing of this cause in the court below, it appeared that the estate of Mrs. McAlpine had been closed, all debts paid and the remainder of her estate, including the real estate in question, had been assigned to defendant McAlpine. His explanation of

his failure to inventory the real estate was that about a year previous to the death of his mother she had executed and delivered to him a deed of all her real estate but which deed could not be recorded because of the tax lien against the property; that said deed had been misplaced or lost and he was, therefore, unable to satisfy the probate court that he was the owner of the property by reason of said conveyance.

We find it unimportant for a determination of the issue here involved whether such claim of defendant McAlpine was true or false. Even if false, upon the death of his mother, he became the sole owner of the property in question, subject to tax liens and the payment of debts.

Plaintiff's second question is stated as follows:

"Where plaintiff is sole and highest bidder at so-called scavenger sale which was conducted in the presence of defendant, who offered no bid, and the total purchase price was paid in cash at the time of the bid, and thereafter defendant as claimed 'owner' met said bid by paying 10 per cent. of the bid price and seeking contract purchase, did the failure of the defendant to personally execute the 'owner's affidavit' simultaneously in accordance with the rules and regulations of the State land office board render the matching bid a nullity, thereby entitling the plaintiff to a conveyance?"

The record discloses that the matching bid of defendant McAlpine, the payment of 10 per cent. of the bid price and the affidavit of his ownership were made by a Mr. Sukenik and/or a Mr. Monroe, whose office was that of one of the leading bidding agents in the city of Detroit. We find nothing irregular or unusual in this proceeding. The matching bid was made, the 10 per cent. thereof paid, and the affidavit of ownership filed simultaneously by Sukenik and Monroe or one of them, and the procedure appears to be regular

in form and in accordance with the rules and regulations of the State land office board. The testimony of Clarence R. Hill of the State land office board was to the effect that the board did not require the filing of a power of attorney by any bidder. However, the record shows that these parties did have the power of attorney from Mr. McAlpine; that they were acting for and on his behalf; that they offered to and did meet the highest bid, deposited the sum bid, made application for a land contract and filed an affidavit of owner's interest on forms prepared and used by the State land office board; that defendant was present at the time; and that a certificate for purchase for owner meeting the highest bid was delivered to him on April 1, 1941, well within 30 days after the sale of the property on March 7th to plaintiff. We find nothing irregular or unusual in the proceedings had by the State land office board in receiving and accepting the matching bid, in its determination that defendant McAlpine was the owner of the property and in the finding and determination by the trial court that the value of McAlpine's interest was greatly in excess of the interest of plaintiff as lessee.

The trial court further found that plaintiff had suffered no damages from any action on the part of the State land office board and that he was not entitled to a deed in accordance with his application to said board and entered a decree dismissing the bill of complaint. We have reviewed *James A. Welch Co.* v. *State Land Office Board,* 295 Mich. 85; *Municipal Investors Ass'n* v. *City of Birmingham,* 298 Mich. 314; *Lewis* v. *Matthews,* 301 Mich. 446, and *Meltzer* v. *State Land Office Board,* 301 Mich. 541, cited by plaintiff, and find them all to be inapplicable to the facts in this case.

At the time of the tax sale at which the State bid in the property for the taxes for 1935 and prior years,

plaintiff had no interest in the premises whatsoever. Neither did he have any interest when title of the State became absolute on November 3, 1939. His payment of rent to defendant McAlpine subsequent to this date gave him no investment or interest in the property. *Stickler* v. *State Land Office Board,* 297 Mich. 271.

The decree is affirmed. No costs are allowed as appellees filed no timely brief.

BOYLES, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.